# CHRIS DANIEL
## HARRIS COUNTY DISTRICT CLERK

DATE 6/19/2015

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/19/2015 4:22:37 PM

CHRISTOPHER A. PRINE
Clerk

**NOTICE OF APPEALS**
**ASSIGNMENT OF COURT OF APPEALS**

TO:     1ST COURT OF APPEALS

From:   **Deputy Clerk: MICHELLE LOPEZ**
        **Chris Daniel, District Clerk**
        **Harris County, T E X A S**

**CAUSE:**   2013-30976

**VOLUME** _____   **PAGE** _____   **OR**   **IMAGE #** 65278233

**DUE** 8/25/2015        **ATTORNEY** 24079195

**NOTICE OF APPEAL HAS BEEN ASSIGNED TO THE** 1ST

**DATE JUDGMENT SIGNED:** 4/27/2015

**MOTION FOR NEW TRIAL DATE FILED** 5/12/2015

**REQUEST TRANSCRIPT DATE FILED** N/A

**NOTICE OF APPEAL DATE FILED** 6/17/2015

**NUMBER OF DAYS: ( CLERKS RECORD )** 120

**FILE ORDERED: YES** ☐ **NO** ☒ **IMAGED FILED: YES** ☒ **NO** ☐

**CODES FOR NOTICE OF APPEAL: BC, C, OA**

CHRIS DANIEL
Harris County, District Clerk

By: _/s/MICHELLE LOPEZ_
**MICHELLE LOPEZ, Deputy**

BC     NOTICE OF APPEAL FILED
BG     NOTICE OF APPEAL FILED – GOVERNMENT
C      JUDGMENT BEING APPEALED
D -    ACCELERATED APPEAL
OA     NO CLERK'S RECORD REQUEST FILED
O      CLERK'S RECORD REQUEST FILED (W/NOTICE OF APPEAL)
NA     AMENDED NOTICE OF APPEAL

NO.: 2013-30976

| | | |
|---|---|---|
| JOSUE ORELLANA AND MERLIN | § | IN THE DISTRICT COURT OF |
| CAROLINA BACA RUBIO, INDIVIDUALLY | § | |
| AND AS REPRESENTATIVES OF THE | § | |
| ESTATE OF JONATHAN JOSUE | § | |
| ORELLANA BACA, DECEASED | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| WESTHEIMER TERRACE APARTMENTS | § | |
| MANAGEMENT, L.L.C. AND | § | |
| WESTHEIMER TERRACE | § | |
| APARTMENTS, L.L.C. | § | 270TH JUDICIAL DISTRICT |

### ORDER GRANTING DEFENDANTS/THIRD-PARTY PLAINTIFFS' NON-SUIT AGAINST PLAINTIFF/THIRD-PARTY DEFENDANT, <u>MERLIN CAROLINA BACA RUBIO</u>

On this day, came to be considered Defendants/Third-Party Plaintiffs Westheimer Terrace Apartments Management, LLC and Westheimer Terrace Apartments, LLC's Non-Suit Against Plaintiff/Third-Party Defendant, Merlin Carolina Baca Rubio. The Court, after considering said Motion, is of the opinion that said Motion should be granted.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the above styled and numbered case shall be non-suited as to Defendants/Third-Party Plaintiffs' claims against Plaintiff/Third-Party Defendant, Merlin Carolina Baca Rubio, without prejudice.

All relief not specifically granted herein is hereby denied.

Costs of Court are taxed against the parties incurring same.

SIGNED on this 27 day of April, 2015.

APR 27 2015

_____
HONORABLE JUDGE PRESIDING

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

**APPROVED AND ENTRY REQUESTED:**

DAW & RAY, LLP


__*Willie Ben Daw, III*_____
Willie Ben Daw, III; TBN: 05594050
E-mail: WBDaw@dawray.com
Kyle D. Giacco; TBN: 07839150
E-mail: Kgiacco@dawray.com
Bianca Cedrone; TBN: 24077294
E-mail: Bcedrone@dawray.com
5718 Westheimer, Suite 1750
Houston, Texas 77057
(713) 266-3121 Telephone
(713) 266-3188 Facsimile

**ATTORNEYS FOR DEFENDANTS,
WESTHEIMER TERRACE APARTMENTS MANAGEMENT, LLC
AND WESTHEIMER TERRACE APARTMENTS, LLC**

## CAUSE NO. 2013-30976

| | | |
|---|---|---|
| JOSUE ORELLANA AND MERLIN CAROLINA BACA RUBIO, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JONATHAN JOSUE ORELLANA BACA, DECEASED, PLAINTIFFS, | § § § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| VS. | | HARRIS COUNTY, TEXAS |
| WESTHEIMER TERRACE APARTMENTS MANAGEMENT, L.L.C. AND WESTHEIMER TERRACE APARTMENTS, L.L.C., DEFENDANTS. | | 270th JUDICIAL DISTRICT |

## PLAINTIFFS' MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Plaintiffs, Josue Orellana, and Merlin Carolina Baca Rubio, Individually and as Representatives of the Estate of Jonathan Josue Orellana Baca, Deceased, and file this Motion for New Trial and respectfully show the Court as follows:

## I.
## INTRODUCTION

1. Plaintiffs' Josue Orellana, and Merlin Carolina Baca Rubio, Individually and as Representatives of the estate of Jonathan Josue Orellana Baca, Deceased (collectively referred to as "Plaintiffs"), sued Defendants, Westheimer Terrace Apartments Management, LLC and Westheimer Terrace Apartments, LLC (collectively referred to as "Defendants"), for negligence, negligence per se, gross negligence and pursuant to a premises liability cause of action.

2. Defendants filed a No-Evidence Motion for Summary Judgment on

proximate cause for all of Plaintiffs' claims, and their claims for attractive nuisance, premises liability, and gross negligence.

3. Plaintiffs filed their First Amended Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment in support of Plaintiffs' claims for attractive nuisance, premises liability, and gross negligence, and established that there is more than a scintilla of evidence to establish proximate cause for each of Plaintiffs' claims. Plaintiffs incorporate their First Amended Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment by reference in this motion.

4. The Court nevertheless granted Defendants' No-Evidence Motion for Summary Judgment, signing an order granting the Motion on April 10, 2015.

5. Then on April 27, 2015, this Court granted Defendants/Third-Party Plaintiffs' Non-Suit Against Plaintiff/Third-Party Defendant, Merlin Carolina Baca Rubio. This order dismissed the last remaining claims and parties of the aforementioned cause number.

6. Plaintiffs now file this motion seeking a new trial.

## II.
## FACTUAL BACKGROUND

7. On May 19, 2013, Plaintiffs' three-year-old son, Jonathan Josue Orellana Baca, exited his parents' apartment, and entered a pool yard enclosure directly outside of the apartment, but located within the apartment complex. *See* Exhibit "B" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 5:20-22, 67:18-21, 82:1-5. He entered the pool yard enclosure because it was defectively designed, built and maintained by Defendant Westheimer Terrace

Apartments, LLC and/or Defendant Westheimer Terrace Apartments Management, LLC. Specifically, the evidence shows that Jonathan got into the pool area by climbing over a fence, *see* Exhibit "D" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 56:1-11, 62:21-63:13, either using a life ring hanging on the fence for support, trees along the enclosure, or by stepping into the enclosure by using the brick protrusions next to the enclosure. *Id.* Evidence supporting the conclusion that Jonathan was able to enter or penetrate the defectively designed, built and maintained pool enclosure includes the abrasions found on his body and the disturbed bushes along the enclosure. Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 114: 4-15; 149:1-20; Exhibit "U" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, photographs of abrasions; *see also* Exhibit "D", 57:9-58:6.

8. Shortly after being attracted to the pool area, Jonathan fell into the dirty, green, and opaque water of the pool. *See* Exhibit "G" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 9:2-6, 8:6-12, 20:4-16. Jonathan's mother, Plaintiff Merlin Carolina Baca Rubio, began searching for the child shortly after he wandered away from their apartment and came across a neighbor giving her son CPR. Exhibit "B" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 58:2-11. A fellow apartment resident, Elliot Acker, had found his body in the deep end of the pool and pulled him out. Exhibit G to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 25:18-22. Other apartment residents attempted life-saving measures, including CPR, as his mother watched, horrified. *Id.* at 18:11-19:11; Exhibit

"B" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 92:11-24.

9. Unfortunately, rescue efforts were unsuccessful, and Jonathan was pronounced dead. He had drowned in the pool at the Westheimer Terrace Apartment complex located at the 9400 block of Westheimer Road in Houston, Texas where he resided with his mother and siblings. *See* Exhibit "B" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 5: 14-22, 14:25-15:2.

10. The apartment complex where Jonathan drowned is owned by Defendant Westheimer Terrace Apartments, LLC and managed by Defendant Westheimer Terrace Apartments Management, LLC. *See* Exhibit "E" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 9:4-20; Exhibit "F" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 79:1-15. The Defendants' pool enclosure failed to prevent Jonathan from accessing the pool. Exhibit "B" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 79:14-17. Despite having been out of service and not open for use by residents since early 2013 for renovations, the Closed Pool was not drained, leaving a dangerous condition to exist on the premises. Exhibit "T" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 52:4-25.

11. The day after the incident, City of Houston Inspector Shakeel Bhatti inspected the pool where Jonathan drowned. Exhibit "H" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 19:15-20,

84:15-23, 65:5-11. Mr. Bhatti created a "submersion investigation" report, indicating that the City of Houston cited Defendant Westheimer for several different violations, including deficiencies with the pool yard enclosure. *Id.* at 28:16-29:15; 84:15-23; Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, pages 101-102. The submersion investigation report indicated that Defendants violated Texas Health and Safety Code §757.003 for the section "C" pool. Specifically, Defendants failed to comply with the requirement as follows:

Enclosure for Pool Yard

a. The height of the pool yard enclosure must be at least 48 inches as measured from the ground on the side away from the pool.

b. Permanent structures may not be within 36 inches of enclosure and readily available for climbing (palm trees).

c. Distance between the fence horizontal bar must be 36 inches or more.

Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, page 101.

12. Rachel Fields, Mr. Bhatti's co-worker, assisted Mr. Bhatti with conducting the submersion investigation. Exhibit "H" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 56:6-19, 80:5-24. Ms. Fields has about three to four more years experience inspecting pools than Mr. Bhatti. *Id.* She concluded that a palm tree outside the fence enclosure was climbable and cited Defendants for violating Texas Health and Safety Code § 757.003. *Id.* 79:16-19, 80:5-81:4. The purpose of §757.003 is to prevent climbability of a pool enclosure for children. *See* Exhibit "I" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 115:18-116:7.

13.     Mr. Bhatti later commented in his deposition that someone could have put their feet on the brick protrusions extending out from the pool house. *Id.* at 83:14-20. Officer Zugner concurred in his observations that Jonathan could have climbed over the pool enclosure by stepping on the brick protrusions. *See* Exhibit "D" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 56:1-11, 62:21-63:13.

### III.
### ARGUMENTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR NEW TRIAL

14.     The Court should grant a new trial because it erred by granting Defendants' No-Evidence Motion for Summary Judgment.

15.     The Texas Supreme Court has made it clear on numerous occasions that a trial court may grant a new trial in the interest of justice. In *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985), the Supreme Court of Texas stated: "The question in this mandamus proceeding is whether a trial court has discretion to grant a new trial in the interest of justice." The Court went on to hold "the trial court granted the new trial 'in the interest of justice and fairness.' This was not an abuse of discretion. Accordingly, the trial court's judgment should not have been disturbed." *Johnson*, 700 S.W.2d at 918.

16.     In *Champion International Corporation v. Twelfth Court of Appeals*, 762 SW2d 898, 899 (Tex. 1988), the Supreme Court of Texas cited *Johnson*, stating "a trial court may, in its discretion, grant a new trial 'in the interest of justice.'" (Citing *Johnson*, 700 S.W.2d at 918). A motion for new trial extends the trial court's plenary power and time for perfecting an appeal up to seventy-five days. *Lane Bank Equip.*

*Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 323 (Tex. 2000); *see also* Tex. R. Civ. P. 329b. Texas trial courts have broad discretion in granting new trials. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 210 (Tex. 2009).

17.     Here, the Court erred by granting Defendants' No-Evidence Motion for Summary Judgment because Plaintiffs provided summary-judgment evidence that raised a fact issue on the proximate cause of Plaintiffs' claims for negligence, negligence per se, premises liability, attractive nuisance, and gross negligence. Tex. R. Civ. P. 166a(i).

18.     Notably, a plaintiffs' burden to defeat a no-evidence motion for summary judgment is relatively low. A plaintiff must only show that a scintilla of fact exists to overcome a defendant's claim that there is no evidence to support the plaintiff's claims. *See id.* In evaluating whether more than a scintilla of evidence exists, the court must view the evidence in the light most favorable to the plaintiff, crediting evidence favorable to the plaintiff if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997).

19.     Plaintiffs proffered evidence that shows each of Defendants' violations of §757.003 were the proximate causes of Jonathan's injuries. "Causation does not have to be supported by direct evidence, as circumstantial evidence and inferences therefrom are sufficient as a basis for finding causation." *Tex. Dept. of Transp. v. Olson*, 980 S.W.2d 890, 891 (Tex. App.—Fort Worth 1998, no pet.). Further, there can

be more than one proximate cause of an event. *See Id.* Most importantly, "[t]he question of proximate cause is one of fact particularly within the province of a jury . . . ." *Potter v. Anthony Crane Rental of Tex., Inc.*, 896 S.W.2d 845, 850 (Tex. App.—Beaumont 1995, writ denied). Despite Defendants' arguments, there are several cause-in-fact or "but for" pieces of evidence that establish Defendants' actions and inactions proximately caused Jonathan's death. At a very minimum, this evidence creates a question of fact that militates against granting Defendants' No-Evidence Motion for Summary Judgment.

20.     As Plaintiffs' evidence demonstrates, owners and managers of apartment complexes, such as Defendants have a duty to "enclose [a] pool yard with a pool yard enclosure" and to meet the minimum standards set out by § 757.003. Jonathan Orellana's death would not have occurred *but for* Defendants' failure to meet the minimum standards for apartment complex pool enclosures mandated by the State of Texas and for failing to maintain it in a safe condition. *See* Tex. Health and Safety Code § 757.003. The City of Houston conducted a post accident submersion investigation of Pool C. *See* Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, page 101. The investigation revealed that the pool Jonathan drowned in was in violation of various state laws. *Id.* Defendants were also cited for violating the Texas Administrative Code § 265. Most importantly, the investigation revealed several deficiencies with the pool enclosure that were the cause-in-fact of Jonathan's death. *Id.*

21.     First, the investigation revealed that the enclosure did not meet the minimum height requirement in accordance with § 757.003(b). *Id.* In particular, "The

height of the pool yard enclosure must be at least 48 inches as measured from the ground on the side away from the pool." *See* Exhibit "N" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment for Tex. Health & Safety Code § 757.003(b); Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 29:3-14. Despite this requirement, the pool enclosure at issue here was less than 48 inches as measured from the ground on the side away from the pool. *See* Kim Tyson's Affidavit, attached as Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6. The height of the enclosure was a contributing factor to Jonathan's death as it was not tall enough to prevent him from entering the enclosure. *Id.* A taller enclosure, and one that is in compliance with § 757.003(b), would prevent a child of Jonathan's age and similar capabilities from climbing over the enclosure. *Id.; see also id.* ¶ 7. Defendants' failure to meet this standard proximately caused Jonathan's death, as he was able to easily enter the pool enclosure. *Id.* at ¶¶ 6-7. Mr. Tyson factored in the height of the pool enclosure into his analysis and opinions formed regarding Jonathan's ability to penetrate the enclosure:

> Q. Okay. I'm asking other than the -- the five you identified, any other violations of the pool -- I'm working big circle down to little circle. We're going to get to talk about all five of these in-depth, but what I'm asking you is, were there any other violations of standards of care or industry standards or ordinances or whatever it might be you looked at other than these five that you believe could have potentially contributed to Jonathan's death?
>
> A. And also the -- there was a citation that the fence was not the proper height. It did not meet the 48 inches.
>
> Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 29:3-14.

22. Second, there were permanent structures around the pool enclosure that children could use to climb over the enclosure. Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, page 101. This, again, violates the Texas Health and Safety Code. Section 757.003(i) of the Code provides:

> Permanent equipment or structures may not be constructed or placed in a manner that makes them readily available for climbing over the pool yard enclosure.

*See* Exhibit "N" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment for Tex. Health & Safety Code § 757.003(i).

23. Defendants were cited for violating this provision because palm trees were within 36 inches of the enclosure allowing children to climb over the enclosure. Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, page 101; *see also* Kim Tyson's Affidavit, attached as Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6-7. A pool investigator with the City of Houston concluded that a palm tree outside the fence enclosure was climbable and cited Defendants for the violation. Exhibit "H" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 56:6-19, 79:16-19, 80:5-81:4; *see* Exhibit "O" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, page 130 (photograph of palm trees around the pool); *also see* Exhibit "I", 110:11-111:15 (Ken Malveaux, City of Houston supervisor, giving the opinion that the palm tree at the pool yard was climbable).

24. Additionally, there were brick protrusions sticking out from the side of the pool house that were in violation of Texas Health & Safety Code § 757.003(i). Exhibit "H" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 83:14-20; *see* Exhibit "Q" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment (photograph of brick protrusions). These protrusions were noted by the investigating police officer as a possible way that Jonathan entered the pool yard. Exhibit "D", 56:1-11, 62:21-63:13; *see also* Kim Tyson's Affidavit, attached as Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6-7.

25. The presence of climbable permanent structures made it possible for Jonathan to get inside the pool yard. Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment at ¶ 6-7. The placement of permanent structures, such as the palm trees and the brick protrusions, so close to the enclosure made it easy for Jonathan to climb into the pool yard. Exhibit "I" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 110:11-111:15; *see also* Kim Tyson's Affidavit, attached as Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6-7. There is sufficient evidence for a jury to conclude that, but for these permanent structures, Jonathan would not have been able to climb over the enclosure. *Id.*

26. Lastly, Defendants were cited for violating Texas code because the distance between the horizontal bars on the pool fence were too close together. Exhibit "J" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for

Summary Judgment, page 101.

> If the pool yard enclosure is constructed with horizontal and vertical members and the distance between the tops of the horizontal members is less than 45 inches, the openings may not allow a sphere 1-3/4 inches in diameter to pass through the enclosure.

> *See* Exhibit "N" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment for Tex. Health & Safety Code § 757.003(e).

27. The purpose of §757.003 is to prevent "climbability" of a pool enclosure for children. *See* Exhibit "I" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 115:18-116:7. Exhibit "P" shows the pool enclosure with two horizontal bars at the top. *See* Exhibit "P" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment. These horizontal bars are within 45 inches of each other and have gaps large than 1-3/4 inches wide. *See* Exhibit "F" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 102:4-17, 105:13-15.

28. The fact that the horizontal bars on the fence were less than 45 inches from each other and allowed spheres larger than 1-3/4 inches in diameter to pass through made the enclosure climbable and was a *but for* factor that contributed to Jonathan's death. Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6-7. An enclosure that complies with the standards set out by § 757.003(i) would have prevented Jonathan from climbing into the pool yard where he drowned in the pool. *Id.*

29. Defendants breached their duty to maintain the pool enclosure in a safe condition to prevent climbing as noted by the submersion investigation. Exhibit "J" to

Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment; Exhibit "R" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, at ¶ 6-7. The deficiencies with the pool enclosure proximately caused Jonathan's death.

30.     Defendants also contend that there is no evidence that Jonathan actually climbed over the fence. However, there is circumstantial evidence to support Plaintiffs' contentions that Jonathan was able to penetrate or rather climb the pool enclosure including, (1) the abrasions on his legs and arms, and (2) the disturbed bushes near the pool enclosure. *See* Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 114: 4-15, 149:1-20; Exhibit "U" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, photographs of abrasions.

31.     Mr. Kim Tyson was deposed on February 18, 2015 regarding his expert opinions involving the condition of the pool enclosure. Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 88:15-89:5. Mr. Tyson was asked what evidence he relied upon to conclude Jonathan climbed or "penetrated" the pool enclosure. One substantial factor he considered were the abrasions on Jonathan's body:

> Q: Okay. Tell me how those abrasions in your opinion support your opinion that he penetrated the barrier at one of the five access points as opposed to somebody helping him over the fence?
>
> A: I would be towards the access points.
>
> Q: You are here as an expert. I'm asking you to tell me what scientific basis you have from the evidence that tells you that. How does the fact that there are abrasions on the hands or feet tell you that he went through those access points as opposed to helped over the fence by someone else?

A: Abrasions would be a ***possibility of climbing***.

Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 114: 4-15 (emphasis added).

32.     Mr. Tyson also took into consideration the evidence of the bushes being disturbed along the fence enclosure. Exhibit "U" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, photographs of abrasions.

> Q: Do you remember reviewing any evidence, testimony, or any kind of reports about the disturbance of the bushes around the ring buoy?
>
> A: There was information in the police report about the bushes in the area around the bushes near the ring buoy being disturbed.
>
> Q: And how does that factor into your physical evidence of indicating that there was indication of climbing?
>
> A: That would also -- that would be ***evidence of possible climbing***.

Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 149:1-20 (emphasis added).

33.     Mr. Tyson also indicated the timeline of events, proximity to the pool, and the attractiveness of the pool all factored into his determination that Jonathan was able to access the pool without any assistance. Exhibit "S" to Plaintiffs' Response in Opposition to Defendants' No-Evidence Motion for Summary Judgment, 103:4-18. With these factors in consideration, there is certainly more than a scintilla of evidence indicating that Jonathan climbed or penetrated the pool enclosure due to its defective design, maintenance, and Defendants' rampant and numerous code violations.

34.     Plaintiffs asks the Court to reconsider the evidence establishing that

Defendants' failure to properly maintain its pool enclosure and keep it in compliance with Texas Health and Safety Code §757.003 is the proximate cause of Jonathan's death.

## IV.
## PRAYER

35. For these reasons, and in the interest of justice and fairness, Plaintiffs ask the Court to grant a new trial, and reset this matter for trial at an early date. Plaintiffs pray for all relief to which they are entitled, whether at law or in equity.

Respectfully submitted,

**HILLIARD MUÑOZ GONZALES LLP**

/s/ Todd A. Hunter Jr.
Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
Rudy Gonzales, Jr.
State Bar No. 08121700
rudyg@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
catherine@hmglawfirm.com
Todd Hunter, Jr.
State Bar No. 24087774
todd@hmglawfirm.com

719 S. Shoreline Boulevard,
Suite 500
Corpus Christi, TX 78401
Telephone No.: (361) 882-1612
Facsimile No.:  (361) 882-3015

## CERTIFICATE OF SERVICE

The undersigned attorney does hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record, listed below, pursuant to the Texas Rules of Civil Procedure on this the 10th day of May 2015.

/s/ Todd A. Hunter, Jr.
Todd A. Hunter, Jr.

**ELECTRONIC FILING SERVICE to:**
*wbdaw@dawray.com; honeill@dawray.com* **&**
**VIA CMRRR: 7014 2120 0003 5415 1846**
Willie Ben Daw, III
Haley O'Neill
Daw & Ray, LLP
5718 Westheimer, Suite 1750
Houston, Texas 77057

**ELECTRONIC FILING SERVICE to:**
*Wsbush.atty@bushramirez.com* **&**
**VIA CMRRR: 7014 2120 0003 5415 1839**
William S. Bush
Bush & Ramirez PLLC
5615 Kirby Dr., Suite 900
Houston, Texas 77005

## CAUSE NO. 2013-30976

| | | |
|---|---|---|
| JOSUE ORELLANA AND MERLIN CAROLINA BACA RUBIO, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JONATHAN JOSUE ORELLANA BACA, DECEASED, PLAINTIFFS, | § § § § § § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § § § § § | HARRIS COUNTY, TEXAS |
| WESTHEIMER TERRACE APARTMENTS MANAGEMENT, L.L.C. AND WESTHEIMER TERRACE APARTMENTS, L.L.C., DEFENDANTS. | § § § § § § | 270th JUDICIAL DISTRICT |

**PLAINTIFFS', JOSE ORELLANA AND MERLIN CAROLINA BACA RUBIO, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF JONATHAN JOSUE ORELLANA BACA, DECEASED, NOTICE OF APPEAL**

1.     Jose Orellana and Merlin Carolina Baca Rubio, Individually and as Representatives of the Estate of Jonathan Josue Orellana Baca, Deceased, ("Plaintiffs") desire to appeal from the Court's Order Denying Motion for New Trial, signed on June 4, 2015, the Court's Order for Interlocutory Summary Judgment, signed on April 10, 2015 and the Court's Order of Non-Suit (Final Order), signed on April 27, 2015.

2.     Plaintiffs appeal to either the First or the Fourteenth Court of Appeals.

3.     Plaintiffs have not previously filed a related appeal or original proceeding in either the First or the Fourteenth Court of Appeals.

Respectfully submitted,

HILLIARD MUÑOZ GONZALES LLP

By: /s/ Marion M. Reilly

Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
Rudy Gonzales, Jr.
State Bar No. 08121700
rudyg@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
Catherine@hmglawfirm.com
John B. Martinez
State Bar No. 24010212
john@hmglawfirm.com
Marion M. Reilly
State Bar No. 24079195
marion@hmglawfirm.com
Neely Balko
State Bar No. 24082652
neely@hmglawfirm.com
Todd A. Hunter Jr.
State Bar No. 24087774
todd@hmglawfirm.com

719 S. Shoreline Boulevard, Suite 500
Corpus Christi, Texas 78401
Telephone No.: 361.882.1612
Facsimile No.: 361.882.3015

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing instrument has been forwarded to all counsel of record, as set out below, on this the 17th day of June 2015, in accordance with the Texas Rules of Civil Procedure.


/s/ Marion M. Reilly
Marion M. Reilly


***VIA ELECTRONIC FILING SERVICE:***
*wbdaw@dawray.com*
Willie Ben Daw, III
*bcedrone@dawray.com*
Bianca Cedrone
Daw & Ray, LLP
5718 Westheimer, Suite 1750
Houston, Texas 77057

***VIA ELECTRONIC FILING SERVICE:***
*Wsbush.atty@bushramirez.com*
William S. Bush
Bush & Ramirez PLLC
5615 Kirby Dr., Suite 900
Houston, Texas 77005

```
JUC8H (NR4#)    JUSTICE INFORMATION MANAGEMENT SYSTEM      JUN 19, 2015(C1)
INT6510                   CIVIL CASE INTAKE              OPT: _____ - INT
                       GENERAL PARTY INQUIRY            PAGE:   1 -    2

CASE NUM: 201330976__ PJN> __  TRANS NUM: _____ CURRENT COURT: 270 PUB? _
CASE TYPE: DAMAGES (ON PREMISES)        CASE STATUS: DISPOSED (FINAL)
STYLE: ORELLANA, JOSUE (INDIVIDUALLY AND VS WESTHEIMER TERRACE APARTMENTS MAN
==============================================================================
                    **** INACTIVE PARTIES ****
  PJN   PER/CONN COC  BAR       PERSON NAME            PTY    ASSOC. ATTY
  NUM    NUMBER                                        STAT
_     00007-0001 3PD          RUBIO, MERLIN CAROLINA BACA
_     00004-0002 3PP 24077294 WESTHEIMER TERRACE APARTMENTS     O'NEILL, HALE
_     00002-0002 3PP 24077294 WESTHEIMER TERRACE APARTMENTS     O'NEILL, HALE
_     00006-0001 AGT          WESTHEIMER TERRACE APARTMENTS
_     00005-0001 AGT          WESTHEIMER TERRACE APARTMENTS
_     00004-0001 DEF 05594050 WESTHEIMER TERRACE APARTMENTS   D DAW, WILLIE B
_     00003-0001 PLT 24087774 RUBIO, MERLIN CAROLINA BACA (I  D HUNTER, TODD
_     00002-0001 DEF 05594050 WESTHEIMER TERRACE APARTMENTS   D DAW, WILLIE B

==> (9) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```

```
CASE NUM: 201330976__ PJN> __  TRANS NUM: _____ CURRENT COURT: 270 PUB? _
CASE TYPE: DAMAGES (ON PREMISES)          CASE STATUS: DISPOSED (FINAL)
STYLE: ORELLANA, JOSUE (INDIVIDUALLY AND VS WESTHEIMER TERRACE APARTMENTS MAN
==============================================================================
                     **** INACTIVE PARTIES ****
  PJN  PER/CONN COC  BAR        PERSON NAME             PTY    ASSOC. ATTY
  NUM   NUMBER                                          STAT
  _    00001-0001 PLT 24087774 ORELLANA, JOSUE (INDIVIDUALLY  D  HUNTER, TODD




==> (9) CONNECTION(S) FOUND
1=ACTIVE      2=ATY. INQ.   3=ACT.ENTRY   4=ISS. SERV.  5=DOC. INQ.
6=CASE INQ.   7=BACKWARD    8=FORWARD     9=PTY. ADDR.  10=REFRESH   11=HELP
```